**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:24-cr-00079 (AWT) |
| v. | |
| TIMOTHY BROCKETT | August 4, 2025 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in advance of the revocation hearing for the defendant, Timothy Brockett ("Mr. Brockett"), which is scheduled for August 5, 2025. It is the Government's understanding that Mr. Brockett will admit to the violations at that hearing. The Government submits that a sentence of imprisonment at the top of the guidelines range is appropriate upon revocation.

## I. FACTUAL BACKGROUND

On July 13, 2022, Mr. Brockett was sentenced to 37 months' imprisonment and 3 years' supervised release after pleading guilty to Unlawful Stealing of Firearms from a Licensed Firearms Dealer in violation of 18 U.S.C. § 922(u),  Conspiracy to Transport Stolen Goods Interstate in violation of 18 U.S.C. § 371, and Conspiracy to Distribute and Possess with Intent to Distribute Less than 50kg of Marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(D). Doc. 94, Pg. 1.

Mr. Brockett commenced his term of supervised release on October 3, 2023, and a transfer of jurisdiction was granted on April 12, 2024, transferring his supervision to the District of Connecticut. *Id*. On July 11, 2024, the United States Probation Office ("USPO") brought four charges against the defendant.  He was summonsed to appear before the court on August 16, 2024.

Before his initial appearance, on August 12, 2024, an additional charge was brought against the defendant for another alleged violation of the conditions of his supervision. On August 16, 2024, a hearing was conducted which resulted in the Court modifying Mr. Brockett's conditions of supervised release, adding among other things, a special condition that he reside and participate in a Residential Re-Entry Center for a period of six months. Doc. 20. On August 28, 2024, the USPO brought three additional charges against the defendant stemming from his arrest by the Connecticut State Police ("CSP") on the same day. On September 3, 2024, the Court ordered the defendant in the custody of Recovery Centers of America ("RCA") as agreed upon by the parties. Doc. 33. The defendant's violation of supervised release proceedings were held in abeyance pending his completion of the program at RCA. The defendant was ordered to reside at RCA until his successful discharge from the program and to "return to court to review release conditions upon discharge, successful or unsuccessful, from RCA." Doc. 31.

On September 30, 2024, the Court granted the defendant's Motion to modify his conditions of release (Doc. 34), ordering the defendant to be transported to Synergy House in Westchester, PA, upon his successful discharge from RCA. Doc. 36. On October 2, 2024, the defendant's Probation Officer ("PO") was notified by RCA staff of an incident between the defendant and a staff member. Initially, the defendant's PO believed that the defendant was unsuccessfully discharged from RCA and was brought to Synergy House by his parents to begin his next phase of treatment. On November 4, 2024, the Court modified the defendant's conditions, placing him in the custody of Synergy House. Doc. 53. On March 27, 2025, the Court granted the defendant's motion to modify his conditions of release, ordering that the defendant participate in the residential treatment program at Caron Treatment Center. Doc. 65.

On April 30, 2025, the Court conducted a telephonic motion hearing and granted the

defendant's motion to modify his conditions of release, discharging him from Caron to Steps to Recovery ("STR"). Doc. 74. On May 19, 2025, Probation filed a Petition for Action on Conditions of Pretrial Release. Doc. 75. The Petition revealed that Synergy House recommended that the defendant be placed at Caron Treatment Center due to a positive drug test for THC while at Synergy House. Additionally, the Petition alleged that while at Caron, the defendant engaged in a sexual relationship with a 16-year-old patient in addition to several violations of Caron's policies which included unauthorized food deliveries and possessing unapproved electronic devices. *Id.* at 3. The Petition also alleged that shortly after arriving at STR on May 1, 2025, the defendant violated his location monitoring conditions. *Id.* On May 27, 2025, the Court conducted a bond compliance hearing. At that hearing, the court modified the conditions of the defendant's bond to add two conditions of release, one of which was to provide the Court with a weekly status report. Doc. 79. On June 4, 2025, Probation filed another Petition for Action on Conditions of Pretrial Release. According to the Petition, over the weekend of May 30, 2025, to June 1, 2025, the defendant accrued several location monitoring violations and was initially non-responsive when Probation attempted to contact him regarding his non-compliance. On June 3, 2025, the defendant admitted to "relapsing over the weekend," admitting that he ingested THC and "whippets."

## II.    LEGAL FRAMEWORK

When modifying or revoking conditions of supervised release, courts consider the following factors set forth in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

. . .

(2)(B) to afford adequate deterrence to criminal conduct;

(2)(C) to protect the public from further crimes of the defendant; and

(2)(D) to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment in the most effective manner;

. . .

(4) the kinds of sentence and the sentencing range . . . ;

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3583(e). Unlike when imposing the original sentence, then, courts must not

consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote

respect for the law, and to provide just punishment for the offense" or "the kinds of sentences

available." 18 U.S.C. § 3553(a)(2)(A), (3); *see Esteras v. United States*, 145 S. Ct. 2031, 2045

(2025) (holding that "[d]istrict courts may revoke a term of supervised release after considering

the factors enumerated in § 3583(e). Because § 3553(a)(2)(A) is excluded from that list, district

courts may not consider it.").

## III.    DISCUSSION

Since the commencement of his supervised release on October 3, 2023, Mr. Brockett

has displayed a blatant disregard for the conditions of his supervised release set by the Court.

In that period of time, he has had four failed drug tests which occurred in December 2023,

March 2024, June 2024, and March 2025, with additional admitted use in July 2024 and May

2025. Doc. 94, Pg. 3. In addition to these failed drug tests, Mr. Brockett has violated home

detention and location monitoring conditions on several occasions by leaving his residence without approval, purchasing marijuana, and failing to perform required check-ins with his PO. Mr. Brockett has also demonstrated an apparent disinterest in maintaining sobriety, as evidenced by his statement to his PO on July 10, 2024, where he stated, "I'm gonna smoke every day nonstop until I can go out man. Do I make myself clear?" In addition to his clear disregard for his conditions of release, during Mr. Brockett's term of supervision, he has displayed a pattern of disrespect towards his PO, including sending a series of inappropriate text messages which included a slew of disrespectful personal insults. Further, as detailed above, Mr. Brockett has been unsuccessfully discharged from several treatment facilities for failure to obey the rules and regulations of the respective programs. Simply put, Mr. Brockett is either unwilling or unable to follow the most basic of rules.

Perhaps most significantly, Mr. Brockett has also had multiple encounters with law enforcement since commencing his term of supervised release. Before a transfer of jurisdiction took place, Mr. Brockett was arrested on March 5, 2024, and charged with three counts of Illegal Possession of a Weapon in a Motor Vehicle, Possession of a Controlled Substance, and Illegally Operating a Motor Vehicle Under the Influence. During this incident, Mr. Brockett, who admitted to smoking marijuana, was found asleep in the driver's seat of his vehicle, appearing disoriented to responding officers. Doc. 94, Pg. 3. During a search of his vehicle, police found three BB guns in the vehicle, one of which was located under the driver's seat. Several months later, on August 28, 2024, Mr. Brockett was arrested and charged with driving under the influence. According to the police report, at around 2:00 P.M., CSP responded to 911 calls reporting that an individual was driving erratically. *Id.* CSP observed Mr. Brockett's vehicle swerving in and out of its lane of travel before pulling over the vehicle. Once the

vehicle was pulled over, CSP identified Mr. Brockett as the driver. *Id.* CSP administered a field sobriety test which Mr. Brockett failed.

These violations are simply the latest in what has become a clear and persistent pattern of Mr. Brockett disregarding his release conditions set by the Court. The Court is familiar with the nature and circumstances of the underlying offense, which is discussed briefly above. *See Esteras*, 145 S. Ct. at 2040 ("In the context of a revocation hearing, the 'offense' is the underlying crime of conviction, not the violation of the supervised-release conditions."). As highlighted in 18 U.S.C. § 3583(e), in determining whether to modify or revoke Mr. Brockett's term of supervised release, the Court may consider certain Section 3553 factors. The most salient in this case are the history and characteristics of Mr. Brockett and the need to afford adequate deterrence to criminal conduct. The procedural history of Mr. Brockett's term of supervision makes it quite clear that despite the Court's best efforts, including several admonishments, nothing to this point has deterred Mr. Brockett from continuing his pattern of behavior. Since his case was transferred in April 2024, Mr. Brockett has been provided numerous opportunities to right the ship, and he has squandered those opportunities. Despite his continued disregard for his conditions of supervision, up and until his latest incident in June 2025, Mr. Brockett has been regularly provided additional chances to prove to the Court that he is willing and able to follow the conditions of his supervision. Rather than take advantage of those opportunities, Mr. Brockett has continued to flout the conditions of his supervision and the rules of each of the programs he has attended. In sum, Mr. Brockett's latest violations have provided no indication that his pattern of blatant disregard for his conditions of supervised release will stop. Therefore, the Government respectfully submits that a sentence of imprisonment at the top of the Guidelines range is appropriate.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

CHRISTOPHER LEMBO
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv207767
157 Church   Street,   25th Floor
New   Haven,   CT 06510
(203) 821-3700

7

8

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

CHRISTOPHER LEMBO
ASSISTANT U.S. ATTORNEY